```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN SIMON                        :      CIVIL ACTION
                                   :
          v.                       :
                                   :
FIRST SAVINGS BANK OF INDIANA      :      NO. 23-721
AND FIRST SAVINGS FINANCIAL        :
GROUP, INC.                        :
```

## MEMORANDUM

Bartle, J.                                          September 14, 2023

        Plaintiff, Brian Simon, has filed this action against his former employers, First Savings Bank of Indiana and First Savings Financial Group, Inc. He asserts claims for breach of contract, breach of implied contract, breach of covenant of good faith and fair dealing, detrimental reliance or promissory estoppel, violation of the Pennsylvania Wage Payment and Collections Law (43 Pa. Stat. Ann. § 260.1, et seq.), and fraud in the inducement. The gravamen of the amended complaint is that defendants reneged in failing to pay him a lump sum severance of a year's salary of $350,000 as well as certain other benefits upon his termination. Subject matter jurisdiction is based on diversity of citizenship and the requisite amount in controversy. See 28 U.S.C. § 1332(a).

        Defendants have moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and for improper venue under Rule 12(b)(3) and

28 U.S.C. § 1406(a).  In the alternative, they also move to transfer venue under 28 U.S.C. § 1404(a) to the Southern District of Indiana where defendants are headquartered.  The court permitted a period of discovery, limited to the issues of personal jurisdiction and venue.

I

The following facts are undisputed.  Defendant First Savings Bank is an Indiana chartered commercial bank and First Savings Financial Group is an Indiana holding company which owns First Savings Bank.  They have their principal places of business in Indiana.  They have no bank branches or other facilities in Pennsylvania, are not registered to do business in the Commonwealth, and own no property here.

Simon was recruited on behalf of the defendants in Pennsylvania through an executive search firm defendants engaged.  The defendants hired him as a Senior Vice-President and Director of the Mortgage Banking Group effective March 1, 2021.  The employment negotiations took place between bank officials in Indiana and plaintiff in Pennsylvania.  One interview occurred remotely in Pennsylvania and another in person in Indiana.  Various emails including a written job offer were sent back and forth between the parties in the two states.  Although defendants never provided plaintiff a final written employment agreement, plaintiff began work and was paid a salary

-2-

of approximately $350,000 annually.  Defendants terminated his employment on January 17, 2023.  In the termination letter, which was sent to him in Pennsylvania, he was advised that his position was being eliminated "as a result of sustained financial loss within the Mortgage Banking division."

During his period of employment with defendants, he worked remotely from his home in Bryn Mawr in the Eastern District of Pennsylvania, although he regularly travelled to defendants' Indiana headquarters on business.  He reported to the defendants' Chief Financial Officer and had several hundred employees directly or indirectly under his supervision.  At times, employees travelled from Indiana to meet with him in Pennsylvania.

While employed, he headed the defendants' Mortgage Division which was their largest and most profitable.  The Mortgage Division originated mortgages nationwide including in Pennsylvania.  During this time, 291 mortgages were originated in Pennsylvania valued at over $75,000,000 while 17,616 were originated elsewhere.  During the last two and a half years, defendants employed five other Pennsylvania residents besides plaintiff.

Simon served as one of five members of the defendants' Mortgage Banking Compliance and Guidance Committee and voted on matters requiring action.  Of the 22 Board of Directors'

meetings held during his employment, he attended nine in person in Indiana and eight via teleconference to provide updates on the Mortgage Division.  In significant part, plaintiff performed his employment obligations for defendants in and from Pennsylvania.

The defendants provided Simon with a laptop computer. The defendants deposited his biweekly paychecks into his bank account in Pennsylvania and withheld state and local taxes.

II

Once the defendant has challenged the lack of personal jurisdiction, the burden rests on the plaintiff to establish that the court may exercise personal jurisdiction.  See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).

A state's power to exercise personal jurisdiction over a defendant is constrained by the due process clause of the Fourteenth Amendment.  Pennsylvania, by statute, has exercised its jurisdictional reach to the fullest extent allowed by the due process clause.  See 42 Pa. C.S.A. § 5322(b).  A federal court sitting in a diversity case is similarly constrained. See Fed. R. Civ. P. 4(k)(1)(A).

III

There are two bases for personal jurisdiction--general and specific--over a defendant corporation in a diversity action.  See Daimler AG v. Bauman, 571 U.S. 11, 122 (2014);

Helicopteros Nocinales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984). The Supreme Court has held that a state and thus a federal district court in the state has general jurisdiction to hear any and all diversity claims against a corporation but only where it is at home. The two so-called paradigmatic fora are where the corporation is incorporated and where it has its principal place of business. The Supreme Court, however, has not ruled out other exceptional situations where a defendant's continuous and systematic activity is at such a high level "so as to render [the defendant] essentially at home in the forum state." Daimler, 134 571 U.S. at 122 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Recently, the Supreme Court has handed down Mallory v. Norfolk Southern Ry Co, 143 S. Ct. 2028 (2023). There, the plaintiff sued his former employer, the defendant railroad, in the state court in Pennsylvania to recover damages for negligence under the Federal Employers' Liability Act. Plaintiff was not living in Pennsylvania and his injuries did not occur here. Plaintiff instead was residing in Virginia. The railroad was also incorporated and had its principal place of business in Virginia but had extensive and regular operations in Pennsylvania. The Supreme Court held that defendant consented to the general jurisdiction of the state court over claims against it when it registered to do business as a foreign

corporation and had appointed an agent to receive service of process in the Commonwealth.  The Court grounded its decision on a Pennsylvania statute which provided that the tribunals of the Commonwealth have general personal jurisdiction over an entity based on its "qualification as a foreign corporation under the laws of this Commonwealth," that is one that is "a registered foreign corporation."  See 42 Pa. Stat. Am. § 5301(a)(2) (i); Mallory, 143 S. Ct. at 2037.

It is undisputed that defendants were not incorporated and did not have their principal place of business in Pennsylvania.  Plaintiff argues that under Mallory this Court can still exercise general jurisdiction over defendants here because they were foreign corporations doing business in Pennsylvania.  Plaintiff presses this argument even though the defendants, unlike the defendant railroad in Mallory, had not registered to do business or appointed an agent to accept process.

Defendants were certainly doing business in Pennsylvania as that term is used in common parlance. Defendants point out, however, that Pennsylvania law contains a number of exceptions to the need to register as a foreign corporation.  See, e.g., 42 Pa. Stat. Am. § 403(a)(7)-(8), (12); 15 Pa. Cons. Stat. § 411.  Under § 403(7), for example, a foreign corporation is not "doing business" in the Commonwealth,

when it is "creating, acquiring or incurring obligations, indebtedness, mortgages or security interests in property." Section 403(8) further exempts "securing or collecting debts or enforcing mortgages or security interests in property securing the debts and holding, protecting or maintaining property so acquired." What defendants do in Pennsylvania fits neatly into these categories.

Even if defendants failed to register in violation of Pennsylvania law, plaintiffs point to no authority and the Court has found none that as a consequence the corporation is deemed to be subject to general jurisdiction. While § 411 precludes such a corporation which fails to register from maintaining an action in the Pennsylvania courts, it specifically allows it to defend an action. The statute further provides that the failure to register does not impair the validity of a contract or any other act of that party. Significantly, it says nothing about implied consent to general jurisdiction as a result of such a violation.

Plaintiff's argument would considerably expand the reach of Mallory. In that case, the Supreme Court carefully limited its holding to the underlying facts where the defendant had registered in Pennsylvania as a foreign corporation. It refused to speculate as to its application in different circumstances. See 143 S. Ct. at 2038. See also Pennsylvania

<u>Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Melting Co.</u>, 243 U.S. 93 (1917).  The plaintiffs' reliance on <u>Mallory</u> to establish that there is general jurisdiction is not persuasive.

Predicated on the record before the court, plaintiff has not shown that defendants are violating Pennsylvania law in not registering as foreign corporations.  Even if this court is incorrect, such a violation does not trigger "consent" to general jurisdiction over all claims against defendants, whatever other penalties may exist.

General jurisdiction would have to rest on the defendants' continuous and systematic activity in Pennsylvania so as to render it at home here.  <u>Daimler</u>, 571 U.S. at 127.  This argument fails.  Defendants are at home in Indiana and are not at home in the Commonwealth.  <u>Id.</u> at 138-39.

This court does not have general personal jurisdiction over the defendants.

IV

The court now turns to the issue of specific personal jurisdiction which exists where a defendant has purposefully directed its activities at the forum and litigation arises out of or is related to those activities.  See <u>Prugler King Corp. v. Rudzewicz</u>, 471 U.S. 467, 472 (1985).  Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy."  <u>Goodyear</u>, 564 U.S. at 919 (quotation omitted).

-8-

The Supreme Court, in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945), enunciated the guidepost for a state's exercise of authority over an out-of-state corporation under the due process clause of the Fourteenth Amendment. It held that the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[1] <u>Id.</u> at 316 (quotation omitted).

In determining whether there is specific jurisdiction, the court focuses not on the contacts of the plaintiff or a third party with the forum but on the contacts of the defendant with the forum. <u>See</u> <u>Walden v. Fiore</u>, 571 U.S. 277, 284-289 (2014). It is "the relationship among the defendant, the forum, and the litigation" that counts. <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) (quoting <u>Sheffer v. Hunter</u>, 433 U.S. 186, 204 (1977). The Supreme Court has also cautioned that there are no "talismanic jurisdictional formulas" and "'the facts of each case must [always] be weighed.'" <u>Burger King Corp. v. Rudzewiz</u>,

---

1. The analysis for specific personal jurisdiction may differ depending on the type of claim alleged. Here, the claims are factually overlapping and no separate analysis is necessary. <u>See</u> <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 317 (3d Cir. 2001); <u>Remick v. Manfredy</u>, 238 F.3d 248, 255-56 (3d Cir. 2007).

471 U.S. 462, 485-86 (1985) (quoting <u>Kulko v. California Superior Court</u>, 436 U.S. 84, 92 (1978)).

In this action defendants in Indiana reached out to plaintiff in Pennsylvania. After a Zoom interview in Pennsylvania and an in-person interview in Indiana, as well as emails and other communication with plaintiff in Pennsylvania, defendants hired him as a Senior Vice-President. He worked out of his home in Pennsylvania and was paid $350,000 per year to perform his work. He headed the Mortgage Division of the defendants, which was the most profitable segment of the defendants' banking business for almost two years. That Division was being run out of Pennsylvania. It produced tens of millions of dollars in revenue. While defendants' business was nationwide, it included significant mortgage business arising out of Pennsylvania. There can be no doubt that officers and employers of defendants in Indiana had continuing high level contacts with plaintiff as he performed his job and thus his contractual obligations in the Commonwealth. As the Supreme Court observed in <u>Burger King Corp.</u>:

> Parties who reach out beyond one state and
> create continuing relationships and
> obligations with citizens of another state
> are subject to regulation and sanctions in
> the other State for the consequences of the
> activities.

471 U.S. at 473.

Unlike lower level employees, Simon exercised authority to act on behalf of defendants and he did so in Pennsylvania. A corporation, of course, is "an artificial being." Trustees of Dartmouth College v. Woodward, 17 U.S. 518, 636 (1819). It can only act through people. When Simon spoke or acted as a corporate officer, it is the corporation that is speaking or acting. As the Superior Court of Pennsylvania explained in Petrina v. Allied Global Corp.: "Where a representative [officers, directors, or other agents] for a corporation acts within the scope of his or her employment or agency, the representative and the corporation are one and the same entity . . . ." 46 A.3d 795, 799 (Pa. Super. 2012) (citing many precedents). Plaintiff's contacts with the forum were also defendants' contacts with the forum. They are inextricably bound. When he was terminated, he was advised that his position was being eliminated due to financial loss in the Mortgage division, the division he headed in Pennsylvania. The termination letter was sent to him in Pennsylvania. His claims in this lawsuit all arise out of his employment relationship.

This is a case where defendants had an extensive, significant long-term relationship with plaintiff in this Commonwealth. Defendants caused the harm to him in Pennsylvania, as a result of any breach of contract. To the extent the harm was intentionally tortious, defendants directed

-11-

and caused the harm in Pennsylvania, and plaintiff felt the harm here.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 256-66 (3d Cir. 1998).  The circumstances here are similar to those outlined in two well-reasoned decisions by my colleagues Judge Curtis Joyner and the late Judge Marvin Katz which upheld specific personal jurisdiction.  See Walsh v. Alarm Security Group, Inc., 157 F. Supp. 2d 501 (E.D. Pa. 2001); Waimberg v. Med. Transp. of Am., Inc., 52 F. Supp. 2d 511, 513 (E.D. Pa. 1999).

Pennsylvania is "the focal point both of the story and of the harm suffered."  Calder v. Jones, 465 U.S. 783, 789 (1984).  The defendants "should reasonably anticipate being hauled into court" in this district.  Word-wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Weighing the relevant facts, the plaintiff has established that defendants have sufficient minimum contacts with Pennsylvania such that the maintenance of the suit does not "offend traditional notions of fair play and substantial justice."  International Shoe, 326 U.S. at 316.

This court has specific personal jurisdiction over the defendants in this action.

V

Defendants also contend that venue is improper.  On this issue, the burden of proof rests on the defendants.  See

Myers v. American Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1983).

> 28 U.S.C. § 1391(b) provides in relevant part:
>
> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located . . . .

Under § 1391(c), a corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the Court's personal jurisdiction with respect to the civil action in question." The court has found that it has personal jurisdiction over the corporate defendants. Consequently, venue is proper. Defendants' reliance on 28 U.S.C. § 1406(a) involving actions filed in the wrong district is misplaced.

The defendants have submitted an alternative motion to transfer this action under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Indiana. It provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

-14-

      While this action might have been brought in that district, the transfer from the Eastern District of Pennsylvania would not be in the interest of justice.  The court has not been advised of any particular burden to defendants' witnesses to travel to Philadelphia or of any other difficulties in having the case tried here.  The plaintiff's choice of forum should not be lightly disturbed.  See <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).  Under all the relevant factors, defendants have not met their burden of establishing the need for a transfer.  <u>Id</u>.