IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN SIMON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST SAVINGS BANK OF INDIANA, | : | NO. 23-721 |
| et al. | : | |

MEMORANDUM

Bartle, J.                                          August 8, 2024

Plaintiff Brian Simon brings this diversity action against his former employers, Defendant First Savings Bank of Indiana and its holding company Defendant First Savings Financial Group, Inc. (collectively "First Savings Bank"). Having been terminated from his position as the Senior Vice President and Mortgage Banking Director, Simon claims in his Amended Complaint breach of contract, breach of implied contract, breach of the covenant of good faith and fair dealing, promissory estoppel, violation of the Pennsylvania Wage Payment and Collections Law (43 Pa. Cons. Stat. § 260.1, et seq.), and fraud in the inducement. The gravamen of his Amended Complaint is that Defendants violated the advance notice of termination and severance terms of Simon's alleged employment agreement.

This court previously denied the motion of Defendants to dismiss the Amended Complaint for lack of personal jurisdiction. Simon v. First Sav. Bank of Indiana, 692 F. Supp.

3d 479 (E.D. Pa. 2023).  Defendants have moved for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.

I

Under Rule 56, summary judgment is appropriate "if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a);  see also Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  A dispute is genuine if the evidence is
such that a reasonable factfinder could return a verdict for the
nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 254 (1986).  The court views the facts and draws all
inferences in favor of the nonmoving party.  See In re Flat
Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient
record evidence for a reasonable factfinder to find for the
nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence
of a scintilla of evidence in support of the [nonmoving party]'s
position will be insufficient; there must be evidence on which
the jury could reasonably find for [that party]."  Id.  In
addition, Rule 56(e)(2) provides that "[i]f a party fails to
properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by

-2-

Rule 56(c), the court may . . . consider the fact undisputed for
the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The facts viewed in the light most favorable to
Plaintiff are as follows.

In December 2020, Defendants engaged an outside
recruiter to search for candidates for the role of Senior Vice
President and Mortgage Banking Director.  As a result of the
recruiter's efforts, First Savings Bank's Chief Executive
Officer Larry Myers, its Chief Financial Officer Anthony Schoen,
and others interviewed Simon for the position.  At the time, he
was employed as the president of multiple mortgage origination
businesses for a portfolio management company and was living in
Pennsylvania.

On February 10, 2021, Schoen emailed Simon a letter
offering him the Senior Vice President and Mortgage Banking
Director position.  Simon did not sign the offer letter.  He had
reservations about taking a position with a bank.  He was
worried that he could be out of a job if Defendants downsized
their mortgage business once interest rates began to rise.
However, he did not convey these concerns to Defendants or to
the recruiter at that time.

Simon called Schoen to request changes in the offer
letter.  The record does not specify what was said during this

-3-

telephone call except that Simon admits he did not at this point request thirty days' notice of termination and severance pay equal to one years' base salary.

On February 12, 2021, Schoen sent Simon a revised offer letter dated February 11, 2021.  Schoen wrote in the covering email that the revised offer letter "includes the commitment to a one-year employment contract which is substantially similar to those currently between [First Savings] Bank and various executive officers."

The February 11, 2021 letter offered Simon the position of Senior Vice President and Mortgage Banking Director. As part of his duties, Simon would also be a member of the Mortgage Banking Compliance and Governance Committee.  He would report directly to Schoen.

The letter stated that Simon's annual base salary would be $350,000, with payment every two weeks.  Simon would also participate in the Mortgage Banking Director Compensation Plan, under which he would receive 5% of the net pretax income for the Mortgage Banking Division.  His starting date would be "no later than March 8, 2021."  He would receive four weeks of pro-rated vacation time in each calendar year.  He would be eligible to participate in Defendants' health, vision, and dental insurance plans.  He would further receive life, disability, supplemental cancer, and supplemental critical care

insurance paid by Defendants.  He would have the opportunity to participate in a 401(k) plan.  Defendants also promised to reimburse him for various business expenses, including $55 per month for cellular phone use, as well as travel expenses and overnight lodging.  The letter, however, made no mention of advance notice of termination or severance pay.

The letter also contained the following paragraph:

> You will be provide[d] the opportunity to enter into a one-year employment agreement with the Bank that is mutually agreeable to both parties and which shall include customary conditions for voluntary (for and without Good Reason) and involuntary (for and without Cause) termination and restrictive covenants relating to competition and solicitations post-employment.

Simon and Schoen both signed the February 11, 2021 letter as of that date.

Sometime after the February 11, 2021 letter was signed, Simon contacted Dawn Black, the Human Resources Manager of First Savings Bank.  He asked her for a draft of the proposed employment agreement before he started working for Defendants. Black told Simon that the draft proposed agreement would not be ready until after his start date because it would first be reviewed by the Compensation Committee of First Savings Bank's Board of Directors ["Compensation Committee"].  Without any further conversations or documentation, Simon left his prior

position and began working for Defendants remotely from
Pennsylvania on March 1, 2021.  There is no evidence that he did
not receive the salary or benefits set forth in the February 11,
2021 letter which he and Schoen had signed.

On April 20, 2021, Schoen emailed Simon a draft of the
proposed employment agreement.  Schoen wrote that it was "a very
standard [employment agreement] used by the other executives at
the Bank but you [Simon] may have specific concerns, questions
or thoughts."  Schoen further wrote that he would relay any
requested changes "northward to the appropriate authorities
(e.g. the Company's Comp[ensation] Comm[ittee])."

The proposed agreement was for a term of employment of
one year beginning on March 1, 2021.  It provided for thirty
days' advance notice by Defendants of involuntary termination
without cause.  It further provided that in the event of
involuntary termination without cause or voluntary termination
by Simon with good reason, Defendants would pay him the base
salary for the remaining term of the agreement as a single lump
sum.  Simon reviewed but never signed the April 20, 2021
proposed employment agreement.

Shortly after, he met with Schoen and Myers.
According to Simon, this meeting was the first and only time
that he specifically requested advance notice of termination and

a year of salary as severance in the event that Defendants

terminated his employment without cause:

> Q: Paragraph 18 [of the Amended Complaint]
> says, "Simon told Larry Myers, [First
> Savings Bank's] Chief Executive Officer, and
> Tony Schoen, [First Savings Bank's] Chief
> Financial Officer, that he would not accept
> a position with [First Savings Bank], unless
> they provided him with downside[] protection
> in the event that [First Savings Bank]
> trimmed or exited the mortgage business."
> When did you tell them that?
>
> A: When I received the Employment Agreement.
>
> . . . .
>
> Q: It says, "Specifically, Simon told Myers
> and Schoen that he required advance Notice
> of Termination and a year of salary of
> severance if [First Savings Bank] terminated
> his employment without cause." . . . That's
> the conversation we just [alluded] to?
>
> A: Correct.
>
> . . . .
>
> Q: You told me you said it to [Schoen] in
> the one occasion with the Employment
> Agreement.  Are there others?
>
> A: I only had to say it once. . . . I asked,
> and they granted what I asked for.

According to Schoen, Myers relayed these requested changes to

the Compensation Committee for approval.

The Compensation Committee convened on April 30, 2021

to consider a revised draft of Simon's proposed employment

agreement.  Changes were approved and a revised draft was signed

that evening by the John Colin, the Chairman of First Savings
Bank's Board of Directors.

That same day, Schoen emailed Simon the revised draft
of the proposed employment agreement.  Unlike the prior draft,
this draft included one years' salary as severance pay as
requested by Simon.[1]  Schoen noted that no other revisions were

---

1.   The April 20, 2021 proposed employment agreement contained
the following language regarding severance pay:

> <u>4.1 Cash Severance after
> Termination Without Cause or Termination for
> Good Reason.</u>  Subject to Section 8.9 of this
> Agreement, if the Officer's employment
> terminates involuntarily but without Cause
> or if the Officer voluntarily terminates
> employment with Good Reasons, the Officer
> shall receive from the Bank <u>the Base Salary
> for the remaining term of the Agreement,</u>
> with the amount paid in a single lump sum
> within ten (10) calendar days of
> termination. . . .

(emphasis added).  In comparison, the April 30, 2021 proposed
employment agreement revised the language regarding severance
pay:

> <u>4.1 Cash Severance after
> Termination Without Cause or Termination for
> Good Reason.</u>  Subject to Section 8.9 of this
> Agreement, if the Officer's employment
> terminates involuntarily but without Cause
> or if the Officer voluntarily terminates
> employment with Good Reasons, the Officer
> shall receive from the Bank <u>the Base Salary</u>,
> with the amount paid in a single lump sum
> within ten (10) calendar days of
> termination. . . .

(emphasis added).

made.  He wrote to Simon "[i]f you're good with this, please execute and return a scanned copy of the signature page." Schoen added that he would send Simon a copy of the agreement with Colin's signature once Schoen received Simon's signature.

Simon never signed the April 30, 2021 proposed employment agreement.  He admits that he "had some additional changes that [he] wanted to request."  Simon set up a meeting with Schoen to continue negotiations on May 17, 2021.  The record does not specify what was said during this conversation except for Simon's email to Schoen on May 18, 2021 memorializing their discussion.  The email listed Simon's proposed changes to the April 30, 2021 draft employment agreement:

> Section 2.2- can we be explicit about the fact that any incentive earned will be paid even if I am termed for no reason prior to the payment date of such incentive?  Ie: we make money in May, I am due an incentive to be paid on June 17, but on June 3 you and Larry decide to shut down the mortgage division
>
> Section 2.4- can you confirm for me that the D&O includes a tail?
>
> Section 4.1- its still a little unclear how the severance would be paid- can we parrot here the language in 5.1 which is super clear?
>
> Section 7.3- can we make the one-way fee shifting two way/mutual?
>
> That's it- just let me know your thoughts and we can put this to bed[.]

Simon considered these requested changes to be material.  It is
undisputed that Defendants never agreed to his changes.

From that point onward, Defendants became unresponsive
to Simon's attempts to discuss the proposed employment
agreement.  According to Simon's deposition testimony, he was
"still negotiating" but "we never reached a mutually [sic]
agreement because one party stopped negotiating in good faith."
Schoen never gave Simon a copy of the April 30, 2021 proposed
agreement bearing Colin's signature.  On October 18, 2021, Simon
contacted a member of the Human Resources department regarding
the agreement.  That individual responded that Defendants were
still "reviewing the Agreement originally provided to you
[Simon] not to make any material changes, but to ensure that the
language is concise and clear" and that a revised draft would be
sent to him by the end of the week.  Defendants never sent Simon
a revised draft.

In 2022, rising interest rates began to affect
negatively the Defendants' Mortgage Banking Division led by
Simon.  On January 17, 2023, Defendants terminated Simon's
employment for financial and economic reasons.  The termination
was effective immediately.  Defendants offered severance pay in
the amount of two weeks of his base salary in exchange for a
release of claims agreement.  He did not agree and never signed
the release.

III

Simon maintains that he had an employment agreement with Defendants (Count One), and in the alternative, that he had an implied employment agreement with them (Count Two). According to Simon, the express or implied employment agreement provided for 30-days' notice of termination and severance pay equal to one years' salary.  It is undisputed that Defendants terminated Simon without any advance notice and provided him with severance pay equal to two weeks' salary.  Defendants argue that summary judgment should be granted in their favor because the parties never entered into any employment agreement.

To succeed in a breach of contract action under Pennsylvania law, a plaintiff must establish: (1) the existence of an agreement, including its essential terms, (2) a breach of a duty imposed by the agreement, and (3) resultant damages."[2] McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010) (internal citations omitted).  As to the first element, a valid agreement requires an offer, acceptance, consideration, and mutual assent by the parties to be bound by the essential terms of the contract.  See Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999);

---

2.  The parties do not dispute that Pennsylvania law governs the interpretation and construction of any alleged employment agreement between Simon and Defendants.

-11-

<u>Chilutti v. Uber Techs., Inc.</u>, 300 A.3d 430, 443 (Pa. Super. 2023).  In the employment context, the essential terms are the rate of compensation and any additional terms that are material to the parties.  <u>Browne v. Maxfield</u>, 663 F. Supp. 1193, 1197-98 (E.D. Pa. 1987) (applying Pennsylvania law).  "So long as the parties agree on essential terms which they intend to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date."  <u>Courier Times, Inc. v. United Feature Syndicate, Inc.</u>, 445 A.2d 1288, 1295 (Pa. Super. 1982).  Whether an undisputed set of facts establishes an agreement is a matter of law.  <u>E.g., United Environmental Group, Inc. v. GKK McKnight, LP</u>, 176 A.3d 946, 963 (Pa. Super. 2017) (internal citation omitted).

The court disagrees with the parties' characterization that the signed offer letter dated February 11, 2021 was merely an agreement to agree.  The letter contained all of the terms that were material to the parties at that time, including the position being offered to Simon, his starting date, base salary, additional compensation from a share of the profits, vacation time, health insurance, health benefits, retirement benefits, and reimbursement for business expenses.  See <u>Browne</u>, 663 F. Supp. at 1197-98.  The terms are definite and nothing of significance disclosed by the parties to each other at that time is missing.  See <u>Forte Sports, Inc. v. Toy Airplane Gliders of</u>

-12-

<u>Am.</u>, Inc., 371 F. Supp. 2d 648, 650 (E.D. Pa. 2004).  The court finds that the February 11, 2021 offer letter signed by Simon and Schoen on behalf of Defendants formed a binding agreement.[3]

It is true that the letter also stated that Defendants would provide Simon "the <u>opportunity</u> to enter into a one-year employment agreement."  (emphasis added).  This term simply expressed the intent of the parties to "adopt a formal document with additional terms at a later date."  <u>See</u> <u>Courier Times</u>, 445 A.2d at 1295.  It does not vitiate the February 11, 2021 agreement.  <u>See</u> <u>Field v. Golden Triangle Broad., Inc.</u>, 305 A.2d 689, 693 (Pa. 1973).  Indeed, the parties fully performed their obligations pursuant to the terms of this agreement.  Without further discussions or negotiations, Simon left his prior position and worked as Senior Vice President and Mortgage Banking Director for Defendants for almost two years.  Simon does not dispute that during this extended period Defendants compensated him and provided him the benefits promised in the February 11, 2021 letter.  There was definitely a meeting of the minds at that time.  On April 20, 2021, Defendants also fulfilled their promise when they presented him with a proposed

---

3.    There is no evidence in the record that the parties entered into an agreement prior to February 11, 2021.  Up to that time, the parties were doing nothing more than discussing and negotiating.  There was no meeting of the minds.

-13-

one-year employment agreement.  Simon never signed it because he wanted material changes.

Simon has sued for breach of contract for the failure of Defendants to have honored a thirty-day advance notice of termination and to pay him a severance of a year's salary.  The February 11, 2021 agreement does not include either of these benefits.  At the time it was signed, Simon had never conveyed to Defendants that these were essential terms.  His signing of the February 11, 2021 letter clearly establishes the contrary. Moreover, Simon testified that the first and only time that he requested these terms was at some point between April 20 and April 30, 2021, and thus after the February 11, 2021 letter was signed.

Simon argues that an oral employment agreement was reached shortly after he received the April 20, 2021 draft employment agreement.  He testified that he requested severance in the amount of one year's salary and that Schoen and Meyers "granted what I asked for."  Defendants presented Simon with these exact terms in writing on April 30, 2024.  It is undisputed that Simon never signed that agreement.  Moreover, Simon testified that at this point he "wasn't finished" and that he was "still negotiating."  He also wanted to request "some additional changes" that he considered to be material.  "To constitute a contract, the acceptance of the offer must be

-14-

absolute and identical with the terms of the offer." <u>Hedden v.
Lupinsky</u>, 176 A.2d 406, 408 (Pa. 1962).  Accordingly, there was
never a meeting of the minds as to these terms.

In the alternative, Simon alleges in the Amended
Complaint that the conduct of the parties created an agreement
implied in fact "concerning 30 days' notice of termination and
the payment of $350,000 in severance."  <u>See</u> <u>Bricklayers of W.
Pennsylvania Combined Funds, Inc. v. Scott's Dev. Co.</u>, 90 A.3d
682, 695-96 (Pa. 2014).  In his supporting brief in opposition
to this motion, Simon does not explain the conduct from which it
can be inferred that such an obligation was created.  <u>See</u> <u>id.</u>
As previously discussed, the parties began performance after the
February 11, 2021 agreement, which did not contain provisions
for advance notice of termination or severance.

Having determined that the parties formed a valid
employment agreement on February 11, 2021, the court now turns
to the second element of breach.  Pennsylvania law presumes that
an employment relationship is at-will.  "Absent a statutory or
contractual provision to the contrary, the law has taken for
granted the power of either party to terminate an employment
relationship for any or no reason."  <u>Geary v. United States
Steel Corp.</u>, 319 A.2d 174, 176 (1974).  "Courts require
definiteness in employment contracting in order to overcome the
at-will presumption."  <u>Martin v. Capital Cities Media, Inc.</u>, 511

-15-

A.2d 830, 834 (1986).  There is no definite provision in the

February 11, 2021 agreement that could permit a jury to find

that the contract was anything other than terminable at will.

While a contractual employment relationship can give

rise to a breach of contract claim, the termination of an at-

will employee cannot support such a claim.  Wurth Baer Supply

Co. v. Strouse, 627 F. Supp. 3d 422, 436-37 (M.D. Pa.

2022)(aggregating Pennsylvania cases).  Accordingly, the

circumstances of Simon's termination did not breach the terms of

his employment agreement with Defendants.

The court will grant Defendants' motion for summary

judgment as to Counts One and Two.

IV

Simon claims that Defendants breached the implied

covenant of good faith and fair dealing.  The implied covenant

of good faith and fair dealing does not allow for a cause of

action separate from a breach of contract claim.  Burton v.

Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013)(summarizing

Pennsylvania law).  The court will also grant summary judgment

as to Count Three.

V

Simon also claims that Defendants violated the

Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat.

§ 260.1, et seq.  As previously discussed, his employment

agreement did not provide for thirty days' notice of termination.  Therefore, Simon is not entitled to recover thirty days' wages under the statute.  <u>See</u> 43 Pa. Cons. Stat. §§ 260.2a, 260.9a.  The court will enter summary judgment in favor of Defendants as to Count Five.

VI

Simon's claim for promissory estoppel also fails. Promissory estoppel is "an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing."  <u>Iversen Baking Co. v. Weston Foods, Ltd.</u>, 874 F.Supp. 96, 102 (E.D. PA. 1995).  As previously discussed, Simon had a valid contract with Defendants.  The court will enter summary judgment in favor of Defendants as to Count Four.

VII

Simon also asserts that he was fraudulently induced by Defendants to accept employment with them.  To succeed in a claim of fraud in the inducement, the plaintiff bears the prima facie burden of demonstrating fraud, that is "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false."  <u>Moser v. DeSetta</u>, 589 A.2d 679, 682 (Pa. 1991).  The burden of persuasion is not merely by a preponderance of the evidence, but by clear and convincing evidence.  <u>Id.</u>

-17-

Simon falls well short of this high bar.  There is not even a scintilla of evidence of fraud.  Again, the parties did not consider advance notice of termination or severance until sometime after April 20, 2021.  By that time, Simon had been working for Defendants for nearly two months.  The court will also grant Defendants' motion for summary judgment as to Count Five.